UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-14031-CIV-MOORE/LYNCH

JOSEFINA FIERROS and NORMA
SOLANO, on behalf of themselves
and all others similarly situated,

   Plaintiffs,

vs.

TAMPA FARM SERVICE, INC., a
Florida corporation,

   Defendant.
_____/

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
## CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, Josefina Fierros and Norma Solano, by and through counsel and pursuant to Local Rules 7.1 and 7.5 of the Southern District Local Rules, hereby submit their Reply Brief in Support of their Cross-Motion for Partial Summary Judgment, and state as follows:

### INTRODUCTION

In this action seeking unpaid overtime compensation pursuant to the Fair Labor Standards Act (FLSA), both the Plaintiffs and Defendant, Tampa Farm Service, Inc. (hereafter "TFS"), have filed Motions for Partial Summary Judgment addressing the applicability of the agricultural exemption to the Plaintiffs. More specifically, both Motions turn on the issue of whether TFS can apply the agricultural exemption to employees, such as the Plaintiffs, notwithstanding the fact that they process eggs produced at farms that are not owned by TFS.

The parties are in agreement that the processing of commodities not grown or produced by an employer typically precludes the application of the agricultural exemption. However, TFS



Case 2:03-cv-14031-KMM Document 57 Entered on FLSD Docket 10/22/2003 Page 2 of 9

Fierros, et al. v. Tampa Farm Service, Inc.
Case No. 03-14031-CIV-MOORE/LYNCH
Plaintiffs' Reply in Support of Cross-Motion
for Partial Summary Judgment

maintains that when outside eggs are *de minimus* or purchased as a result of "a catastrophic loss of production," the exemption is not lost. In response, Plaintiffs have demonstrated that while other circuits have permitted the exemption to be maintained notwithstanding *de minimus*, occasional and situational processing of outside commodities, the Eleventh Circuit and the Department of Labor have long held that any processing of outside commodities results in the loss of the agricultural exemption.

TFS, perhaps realizing that the weight of binding authority is contrary to its position, now raise an entirely new argument in its Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment. TFS asserts that Plaintiffs are illegal aliens and contends that they are consequently precluded from seeking recovery of unpaid compensation under the FLSA. The addition of this "eleventh hour" argument is a thinly-veiled desperation tactic that is procedurally inappropriate, ethically questionable, and, most importantly, entirely incorrect. The Eleventh Circuit has held for over fifteen years that undocumented or "illegal" aliens are entitled to recover unpaid compensation under the FLSA.

Thus, as will demonstrated below in greater detail below, TFS has not presented any binding authority that supports its position. Rather, the binding authorities mandate that this Court find, as a matter of law, that the Plaintiffs were not exempt from the overtime provisions of the FLSA.

## ARGUMENT

### I. TFS Cannot Preserve The Agricultural Exemption By Characterizing Its Outside Egg Purchases As Resulting From "Catastrophic Loss"

In its own Motion for Partial Summary Judgment, and in its Reply supporting that Motion, TFS asserted that Plaintiffs, who admittedly processed eggs not produced by TFS in

2

Fierros, et al. v. Tampa Farm Service, Inc.
Case No. 03-14031-CIV-MOORE/LYNCH
Plaintiffs' Reply in Support of Cross-Motion
for Partial Summary Judgment

several workweeks, were nonetheless exempt because these eggs were purchased due to losses in production and were *de minimus*. In their response, Plaintiffs demonstrated that the Eleventh Circuit (through decisions by the former Fifth Circuit) has long-maintained that the *de minimus* rule is inapplicable to FLSA exemption analyses. See, e.g., Brennan v. Sugar Cane Growers Cooperative of Florida, 486 F.2d 1006 (5th Cir. 1973).

Apparently recognizing the futility of asserting the *de minimus* rule, TFS now focuses on the circumstance, rather than the quantity, of outside egg purchases, and asserts that purchases resulting from catastrophic losses in production do not preclude the application of the agricultural exemption (regardless of frequency or quantity). However, this attempt to distinguish catastrophic loss purchases from *de minimus* purchases is not supported by the cases TFS relies upon. Moreover, even if these cases did make such a distinction, any rule that allows an employer to preserve the agricultural exemption while purchasing and processing outside commodities is clearly contrary to the Eleventh Circuit and the Department of Labor's clear pronouncements.

    A.    <u>TFS's Cases Do Not Stand For The Proposition That Purchases To Cover Catastrophic Losses – In Any Amount – Have No Impact On The Agricultural Exemption</u>

TFS contends that the cases it relies upon held that agricultural employers do not lose the ability to apply the agricultural exemption "when they purchase goods in the marketplace to cover for a catastrophic loss on their farms" and that "these cases do not apply the *de minimus* doctrine." Defendant's Reply/Opposition Brief, p. 3. In other words, TFS believes that regardless of frequency or quantity, the purchase of outside eggs to cover catastrophic losses does not impact the agricultural exemption.

3

Fierros, et al. v. Tampa Farm Service, Inc.
Case No. 03-14031-CIV-MOORE/LYNCH
Plaintiffs' Reply in Support of Cross-Motion
for Partial Summary Judgment

The cases cited by TFS simply do not stand for this proposition. For example, in <u>Adkins v. Mid-American Growers, Inc.</u>, 167 F.3d 355, 357 (7th Cir. 1999), the Seventh Circuit did find that outside egg purchases did not preclude the application of the agricultural exemption, in part, because these purchase were "because of production shortfalls." However, contrary to TFS's assertion, the Court did apply the *de minimus* doctrine in this analysis, as it described the outside purchases as a "small percentage" and "a tiny amount of peripheral activity not strictly agricultural." Id. at 357, 359.

Likewise, in <u>Walling v. Rochlin</u>, 132 F.2d 3 (8th Cir. 1942), in discussing the impact of emergency purchases of outside products, stated that "the extent to which this is done is <u>negligible</u>" and that "the <u>occasional</u> purchase and sale of products necessitated by reason of storms, frost, and other emergencies" would not destroy the exemption. Id. at 7 (emphasis added). Thus, once again, it was not merely the <u>circumstance</u> of outside purchases that the court deemed pertinent. Rather, it was the <u>quantity</u> and <u>frequency</u> that controlled its analysis.

Finally, in <u>Wirtz v. Jackson & Perkins Company</u>, 312 F.2d 48 (2nd Cir. 1963), the court held that the employer could preserve the agricultural exemption because it only purchased outside products "to make up for <u>temporary</u> shortages," and noted that "were any <u>significant portion</u> of the stock handled in defendant's storages purchased from such independent sources, it is clear that the agricultural exemption would not apply." Id.. at 51 (emphasis added). Therefore, once again, the court did apply a *de minimus* concept in its analysis.

Contrary to TFS's assertion, none of the cases it cites found that outside purchases resulting from catastrophic losses – regardless of quantity or frequency – do not impact agricultural exemption. Rather, each of the cases it relies upon applied a *de minimus* analysis and found that the exemption could be maintained despite such purchases <u>only</u> if they were in an

Fierros, et al. v. Tampa Farm Service, Inc.
Case No. 03-14031-CIV-MOORE/LYNCH
Plaintiffs' Reply in Support of Cross-Motion
for Partial Summary Judgment

amount that could be disregarded as *de minimus*. As the *de minimus* doctrine has been specifically rejected by the Fifth/Eleventh Circuit and the Department of Labor Regulations, these cases must be disregarded.

   B. <u>Even If TFS's Cases Held That The Agricultural Exemption May Be Preserved Notwithstanding Purchases To Cover Catastrophic Losses, Such A Holding Is Contrary To Binding Precedent</u>

Assuming *arguendo* that TFS's assertion that <u>Adkins</u>, <u>Walling</u> and <u>Wirtz</u> held that "catastrophic loss" outside egg purchases – regardless of quantity and frequency – have no impact on the agricultural exemption, such a holding is contrary to binding precedent in this Circuit and must be rejected.

No court within the Eleventh Circuit has ever held that "catastrophic losses" provide an exception to the general rule that the processing of outside commodities destroys the agricultural exemption. Rather, every Eleventh Circuit court that has addressed the issue has held that an employee is nonexempt whenever they process <u>any</u> outside commodities. <u>See, e.g.</u> <u>Ares v. Manuel Diaz Farms, Inc.</u>, 318 F.3d 1054 (11th Cir. 2003) (stating that an employer was exempt because it sold <u>only its own products</u>.") (emphasis added); <u>Brennan v. Gustafson's Dairy, Inc.</u>, 382 F.Supp. 964, 967-968 (M.D.Fla. 1974) ("it must be emphasized with respect to <u>all practices</u> performed by a farmer, for which a claim is made that they are incident to or in conjunction with his farming operations, that they must be performed <u>only</u> on the agricultural or horticultural commodities... <u>raised by him</u>.") (emphasis added). Thus, the Eleventh Circuit -- consistent with its rejection of the *de minimus* rule, excludes from the agricultural exemption any employee that processes any outside commodities under any circumstance.

This holding is consistent with Department of Labor ("DOL") regulations which state that agricultural employees are exempt only if they process commodities produced solely by their

5

Fierros, et al. v. Tampa Farm Service, Inc.
Case No. 03-14031-CIV-MOORE/LYNCH
Plaintiffs' Reply in Support of Cross-Motion
for Partial Summary Judgment

employer. 29 C.F.R. § 780.137 (the agricultural exemption can only be applied with respect to practices "performed in connection with the farming operation of the same farmer" and "the requirement is not met with respect to employees engaged in any practices performed by their employer in connection with farming operations that are not his own.") 29 C.F.R. § 780.141 (the performance on a farm of any practice, such as packing or storing, which may be incidental to farming operations cannot constitute a basis for considering the employees engaged in agriculture if the practice is performed upon any commodities that have been produced elsewhere than on such farm). Nowhere in the regulations does the DOL state, or even suggest, that this rule may be overridden if the outside commodities are purchased due to catastrophic losses. This Court should defer to the DOL and find that TFS's admission that Plaintiffs process outside eggs is tantamount to an admission that they were not exempt. See Falken v. Glynn County, Georgia, 197 F.3d 1341, 1346 (11th Cir. 1999) (the DOL's regulations implementing the FLSA are accorded deference as long as they represent a permissible construction of the statute).

The rule in the Eleventh Circuit, supported by the DOL, is clear. Regardless of the quantity, regardless of the frequency, regardless of the circumstance, if an employee processes commodities that were not produced or raised by his or her employer, he or she is not exempt from the overtime provisions of the FLSA. Therefore, in every week in which Plaintiffs processed outside eggs, they were not exempt.

### III. Plaintiffs' Status As "Legal" Or "Illegal" Aliens Is Entirely Irrelevant To The Case At Bar

In the final section of its Opposition to Plaintiffs' Motion for Partial Summary Judgment, TFS contends that Plaintiffs are "illegal aliens" and that, as such, they cannot recover under the FLSA. Notably, TFS did not raise this argument in its own Motion for Partial Summary

Fierros, et al. v. Tampa Farm Service, Inc.
Case No. 03-14031-CIV-MOORE/LYNCH
Plaintiffs' Reply in Support of Cross-Motion
for Partial Summary Judgment

Judgment. Rather, it was not until Plaintiffs filed their own Cross-Motion for Partial Summary Judgment that TFS first raised this argument.

TFS's argument is entirely without merit. The issue of whether immigration status impacts FLSA coverage and entitlement was specifically addressed and resolved by the Eleventh Circuit in Patel v. Quality Inn South, 846 F.2d. 700 (11th Cir. 1988), cert. denied 489 U.S. 1011, 109 S.Ct. 1120 (1980). There, the Court concluded that undocumented aliens are "employees covered by the FLSA" and that they are "entitled to the full range of available remedies under the FLSA without regard to [their] immigration status." Id. at 705-706; see, also, Martinez v. Mecca Farms, 213 F.R.D. 601, 604-605 (S.D.Fla. 2002) (reaffirming Patel and noting that the decision in Hoffman Plastic Compounds v. NLRB does not impact entitlement of undocumented aliens to recover compensation for work already performed).[1] The rationale for this ruling is clear and persuasive, as the Eleventh Circuit stated:

> The FLSA's coverage of undocumented aliens goes hand in hand with the policies behind the IRCA. Congress enacted the IRCA to reduce illegal immigration by eliminating employers' economic incentive to hire undocumented aliens... The FLSA's coverage of undocumented workers ha a similar effect in that it offets what is perhaps the most attractive feature of such workers – their willingness to work for less that the minimum wage. If the FLSA did not cover undocumented aliens, employers would have an *incentive* to hire them. Employers might find it economically advantageous to hire and underpay undocumented workers and run the risk of sanction under the IRCA.

846 F.2d at 704.

This case illustrates this point well. TFS has been violating the overtime provisions of the FLSA for over ten years (at least), as was found by the Department of Labor's 1992 audit. It

---

[1] The Court specifically distinguished the right to seek wages and overtime "for work *already performed*" from the line of cases (including the Sure-Tan v. NLRB decision cited by TFS) addressing whether undocumented aliens may seek damages arising from "*the loss of their jobs.*" Patel, 846 F.2d at 705.

7

Fierros, et al. v. Tampa Farm Service, Inc.
Case No. 03-14031-CIV-MOORE/LYNCH
Plaintiffs' Reply in Support of Cross-Motion
for Partial Summary Judgment

has been able to do so, to a large degree, by hiring undocumented aliens that are unlikely to challenge these practices or file complaints for fear of deportation. Now, when a group of employees has elected to combat this unlawful practice – and it has become apparent that TFS cannot rely on the agricultural exemption to overcome their efforts - TFS attempts to use their immigration status as a "sword" to defeat or, failing that, to disparage these employees. This Court should not only reject this tactic (as it must under Patel), it should also admonish TFS and its counsel for utilizing this tactic.[2]

## CONCLUSION

Plaintiffs have demonstrated that, as a matter of law, in every week in which they processed eggs purchased from outside suppliers, they were not exempt from the overtime provisions of the FLSA. Consequently, on this discreet issue, Plaintiffs are entitled to judgment as a matter of law.

Date: October 20, 2003                     Respectfully submitted,

_____
David H. Spalter, Esquire
Florida Bar No. 966347
LAW OFFICE OF DAVID H. SPALTER, P.A.
3325 South University Drive, Suite 102
Davie, Florida 33328
Telephone: (954) 382-6220
Facsimile: (954) 382-5223
Email: EmploymentEsq@aol.com

---

[2] Indeed, the manner in which TFS's counsel has raised this issue arguably could be deemed to be contrary to the spirit, if not the letter, of Rule 4-3.4 of the Florida Rules of Professional Conduct, which provides that it is inappropriate for a lawyer to "present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."

<u>Fierros, et al. v. Tampa Farm Service, Inc.</u>
Case No. 03-14031-CIV-MOORE/LYNCH
Plaintiffs' Reply in Support of Cross-Motion
for Partial Summary Judgment

> J.D. Lewis, III, Esquire
> Florida Bar No. 206377
> Lee J. Baggett, Esquire
> Florida Bar No. 467189
> LEWIS, MORTELL & LEWIS, P.A.
> 1115 East Ocean Boulevard
> Stuart, Florida  34996
> Telephone: (772) 286-7861
> Facsimile: (772) 288-2013
> Email: LEEBAGG@aol.com
>
> Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via U.S. Mail on this 20 day of October, 2003, upon the following individuals:

> David B. Earle, Esq.
> Ross, Earle and Bonan, P.A.
> Royal Palm Financial Center, Suite 212
> 759 South Federal Highway
> Stuart, Florida  34994
>
> Thomas K. Gallagher, Esq.
> Ruden, McClosky, Smith, Schuster & Russell, P.A.
> 200 East Broward Boulevard, 15[th] Floor
> Fort Lauderdale, Florida  33302

_____
David H. Spalter, Esq.